**MATTHEW PAPPAS** (CA. SBN #: 171860)
*Pro hac vice application pending*
Oklevueha Native American Church
1719 E. Broadway
Long Beach, CA 90802
Phone: (949) 382-1485
Facsimile: (949) 242-2605
E-Mail: matt.pappas@mattpappaslaw.com

**MICHAEL ROSE** (OSB #: 753221)
Creighton & Rose P.C.
815 SW 2nd Ave., Ste. 500
Portland, OR 97204
Phone: (503) 221-1792
Facsimile: (503) 223-1516
E-Mail: mrose@civilrightspdx.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT
# DISTRICT OF OREGON
# PORTLAND DIVISION

|  |  |
|---|---|
| OKLEVUEHA NATIVE AMERICAN CHURCH; JAMES MOONEY; and JOY GRAVES, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES OF AMERICA; UNITED STATES POSTAL SERVICE; and MEGAN J. BRENNAN, in her capacity as Postmaster General of the United States, <br><br> Defendants. | **VERIFIED COMPLAINT FOR VIOLATION OF THE RELIGIOUS FREEDOM RESTORATION ACT; THE RELIGIOUS LAND USE AND INSTITUTIONALIZED PERSONS ACT; AND INJUNCTIVE RELIEF (AMENDED)** |

Plaintiffs **OKLEVUEHA NATIVE AMERICAN CHURCH**, **JAMES MOONEY** and

**JOY GRAVES** complain of violations of the Religious Freedom Restoration Act and Religious

Land Use and Institutionalized Persons Act as follows:

## JURISDICTION AND VENUE

1. Plaintiffs seek relief for violations of 42 U.S.C. 2000bb, *et seq*. and 42 U.S.C. 2000cc, *et seq.* providing this court with subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338.

2. Venue is proper in this Judicial District because the injury alleged in this Complaint occurred in Portland, Oregon.

## PARTIES

3. Plaintiff OKLEVUEHA NATIVE AMERICAN CHURCH ("CHURCH") is a Native American Church based in the State of Utah. A branch of CHURCH operates in Cottage Grove, Oregon. Plaintiff JAMES MOONEY ("MOONEY") is a co-founder of CHURCH and serves as its spiritual leader.

4. Defendant UNITED STATES OF AMERICA ("UNITED STATES") is a sovereign with limited powers operating pursuant to the Constitution of the United States. Defendant UNITED STATES POSTAL SERVICE ("POSTAL SERVICE") is an agency of Defendant UNITED STATES. Defendant MEGAN J. BRENNAN ("BRENNAN") is sued solely in her capacity as Postmaster General of Defendant POSTAL SERVICE.

5. Plaintiff JOY GRAVES ("GRAVES") is an individual and member of CHURCH who resides in Cottage Grove, Oregon. GRAVES is a leader of CHURCH's branch located in Cottage Grove, Oregon. GRAVES is a citizen of Defendant UNITED STATES.

## JURISDICTIONAL PREREQUISITES

6. No government claim filing prerequisite is applicable in this case which seeks only injunctive and declaratory relief remedies.

7. The actions complained of by Plaintiffs began taking place on or around December 10, 2015 and all such actions took place in the District of Oregon.

## STATUTORY AND DECISIONAL LAW ALLEGATIONS

8. Under the *Religious Land Use and Institutionalized Persons Act* (RLUIPA), 42 U.S.C. §§ 2000cc, *et seq.*, "No government shall impose or implement a land use regulation in a

manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the government demonstrated that imposition of the burden on that person, assembly, or institution, (A) is in furtherance of a governmental interest; and (B) is the least restrictive means of furthering that compelling governmental interest. CHURCH is a religious assembly or institution for purposes of the RLUIPA. Plaintiffs MOONEY and GRAVES are both "persons" for purposes of RLUIPA.

9.      The *American Indian Religious Freedom Act*, 42 U.S.C. § 1996 ("AIRFA") protects and preserves the traditional religious rights and cultural practices of American Indians, Eskimos, Aleuts, and Native Hawaiians. These rights include, but are not limited to, access to sacred sites, freedom to worship through ceremonial and traditional rights, and use and possession of objects considered sacred. AIRFA was amended in 1994 to specifically protect the sacramental use of peyote by Native Americans. CHURCH is an "Indian religion" as defined by AIRFA.

10.     The *Religious Freedom Restoration Act of 1993* (RFRA), 107 Stat. 1488, as amended, 42 U.S.C. § 2000bb *et seq.*, applies to the Federal government, including each of the Defendants, and prohibits law and rules of the United States from substantially burdening a person's exercise of religion even if the burden results from a rule of general applicability. The RFRA requires the "strict scrutiny" review standard be used when analyzing federal laws and rules that burden free exercise. The RFRA applies "to all Federal law, and the implementation of that law, whether statutory or otherwise."

11.     In *Gonzales v. O Centro Espirita Beneficiente Uniao do Vegetal*, 546 U.S. 418 (2006) the U.S. Supreme Court held the federal *Controlled Substances Act* (CSA), 21 U.S.C. § 801 *et seq*. does not meet the as applied "strict scrutiny" standard expressed in the RFRA.

12.     Between March 1, 2014 and December 14, 2014, the United States House of Representatives and United States Senate voted to enact H.R. 83, an appropriations bill. Prior to its enactment, H.R. 83 was amended to include Section 538 (Sec. 538) which prohibited the Department of Justice from using funds in a manner inapposite to the implementation of state medical marijuana laws in 32 states and the District of Columbia. Thereafter, on December 16,

2014, the President signed H.R. 83, which was codified as Public Law 113-265 and provides in Sec. 538:

> "None of the funds made available in this Act to the Department of Justice may be used, with respect to the States of Alabama, Alaska, Arizona, California, Colorado, Connecticut, Delaware, District of Columbia, Florida, Hawaii, Illinois, Iowa, Kentucky, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nevada, New Hampshire, New Jersey, New Mexico, Oregon, Rhode Island, South Carolina, Tennessee, Utah, Vermont, Washington, and Wisconsin, to prevent such States from implementing their own State laws that authorize the use, distribution, possession, or cultivation of medical marijuana."

13.     In 2015, Congress voted to reauthorize Sec. 538 for fiscal 2016.

14.     The State of Oregon has enacted laws providing for medical marijuana, the *Oregon Medical Marijuana Act*, codified as Or. Rev. Stat. § 475.300 (2007); Or. Rev. Stat. §§ 475.302(5); 475.312(2) (2007).

15.     As of the filing of this Complaint, more than thirty-two (32) states and the District of Columbia have enacted some form of cannabis legislation for patients suffering from severe illness and disability; (B) Congress enacted Sec. 538 restricting the use of funds by the federal Department of Justice against implementation of medical cannabis laws in 32 states; (C) in January, 2013, the National Cancer Institute, part of the federal government's *National Institutes of Health*, reported cannabis reduces the size of cancerous tumors; (D) in 2003, the United States obtained a patent titled, "The Antioxidant and Neuroprotective benefits of Cannabinoids;" (E) multiple scientific studies and reports show cannabis is the only medication effective in treating severe childhood epilepsy; and (F) numerous scientific articles report cannabis is effective in treating a myriad of human health ailments.

16.     As a result of: (A) Congress's enactment of Sec. 538; (B) the enactment of Oregon's medical marijuana laws; (C) the publication of numerous studies showing cannabis is safer than alcohol; (D) the use of sacramental wine by other religious groups; (E) numerous actions taken by the Article II Branch restricting the use of resources for purposes of federal marijuana prosecutions; (F) the many respected medical studies showing the health benefits

provided by cannabis; and (G) the hundreds of years of traditional use of cannabis and the federally allowed use of peyote and other natural plants by Native Americans in their religious practices, there is no longer even a *rational basis* justifying confiscation of marijuana by the Defendants that is used by CHURCH for its religious practices and ceremonies.

17.     Through substantive due process "emerging awareness", the members of CHURCH who use cannabis as part of Native American spiritual healing practices that integrate into CHURCH's religious beliefs the concept of medicine-men, healing and being one with the Earth have a fundamental right to do so to alleviate and treat physical and mental conditions from which they suffer. *Lawrence v. Texas*, 539 U.S. 558, 578, 123 S.Ct. 2472, 156 L.Ed.2d 508 (2003); *Raich v. Gonzales*, 500 F.3d 850, 864-66  (2007).

## COMMON FACTUAL ALLEGATIONS

18.     CHURCH was established in April of 1997 in Gunnison, Utah by Plaintiff James Mooney, the progeny of Native Americans, and by his wife Linda, also of Native American descent (together referred to as "MOONEYS"). Plaintiff MOONEY is a descendant of Osceola (1804-1838), an influential leader of the Seminole Indian Tribe in Florida. (See Exhibit 1, *Oceola, Cherokee and Creek Indian Reservation Tribal Card*.)  Plaintiff MOONEY continues to serve as the spiritual leader of CHURCH, which in 2007 was recognized and serves the federally recognized Oglala Sioux Tribe of Pine Ridge as the *Oklevueha Lakota Sioux Nation Native American Church*. (See Exhibit 2, *Articles of Formation*, incorporated by this reference.) CHURCH is also recognized by the Lakota Sioux Rosebud Tribe of South Dakota.

19.     CHURCH has thousands of members in the United States, Canada, Mexico, South America and Africa.

20.     Part of Plaintiff CHURCH's religious practices includes Native American "medicine men." The integration into its religion of nature, natural health and the "medicine men" is a core principal and part of the CHURCH's ongoing Native American practices that have been part of Native American culture and religious practice for hundreds of years. Along with peyote, cannabis and various other natural herbs and plants are used in the sacramental processes by CHURCH medicine men and members.

21. In 2000, CHURCH became affiliated with the Huichol tribe, an indigenous people of Sonora, Mexico. The proclamation between CHURCH and the Huichol tribe is included as Exhibit 3 with this Complaint and incorporated by this reference.

22. The Huichol are a deeply religious people that have a belief structure which encompasses every aspect of life and includes ceremonies from pre-Colombian mythology that places special emphasis on the deer, corn plant, and the peyote plant, a small, spineless, flowering cactus plant which is used as a hallucinogen before and during religious ceremonies. For hundreds of years, the Huichol have used a common form of hemp called *mariguana* or *rosa maria* (*Cannabis sativa*) in their spiritual healing practices.

23. Since its inception, CHURCH has followed traditional Native American religious ceremonies including those of the indigenous people and tribes with which it is affiliated. Cannabis is integral to CHURCH's spiritual healing practices.

24. Since 1997, numbers of branches of CHURCH have been established around the United States, including its branch located at 1630 Curtin Road, Cottage Grove, Oregon ("BRANCH"). Each CHURCH branch is blessed by James Mooney and conducts the Native American religious ceremonies, rituals and spiritual healing practices of CHURCH using peyote, cannabis and other plants.

25. In or around 1999, the State of Utah wrongfully arrested the MOONEYS and charged them as well as CHURCH with violating the Utah Controlled Substances Act ("UCSA").

26. In 2004, the Utah Supreme Court held the religious peyote provisions of 42 U.S.C. § 1996a protected the MOONEYS and CHURCH from prosecution for the religious use of peyote under the UCSA. As a result of the state's highest court's decision, charges against CHURCH and the MOONEYS were dismissed. *State of Utah v. Mooney*, 2004 UT 49 (2004).

27. GRAVES serves as the leader of CHURCH's BRANCH in Cottage Grove Oregon. GRAVES has been blessed by James Mooney as has the BRANCH in Cottage Grove, Oregon. GRAVES prepares the sacraments used by CHURCH members pursuant to their religious beliefs including but not limited to cannabis. Sacramental cannabis grown by

BRANCH is used by members of BRANCH as well as other branches of CHURCH. GRAVES distributes sacraments to CHURCH members who are a part of BRANCH.

28.     On or around December 10, 2015, GRAVES prepared a package including sacramental cannabis for a CHURCH member located in Ohio. The package contained approximately five (5) ounces of cannabis.

29.     The package included on it that it was from CHURCH.

30.     The package was addressed to the member in Ohio with "ONAC" (the acronym used by CHURCH) in the address line.

31.     On December 10, 2015, GRAVES submitted the package for mailing to the United States Post Office in Eugene, Oregon. The package was sent "Priority Mail" and was assigned USPS tracking number 9505 5141 7801 5344 1322 75.

32.     On or around December 18, 2015, GRAVES learned from the United States Postal Service web tracking page that the package had been seized by Defendant UNITED STATES at its post office in Portland, Oregon for "law enforcement" reasons. (See Exhibit 4, *USPS.com Tracking report*.)

33.     The "status" of the package as reported by USPS.com (as reported in Exhibit 4) is "Seized by Law Enforcement."

34.     On December 22, 2015, GRAVES contacted the United States Post Office in Portland, Oregon and was directed to Postal Inspector Melvin. GRAVES spoke to Inspector Melvin who told her the package had been seized by the Postal Service because it contained cannabis. GRAVES told Inspector Melvin she was a member and branch leader of CHURCH and the cannabis was for sacramental purposes for members in Ohio. She asked the package be sent through to Ohio and Inspector Melvin refused to release the package. Inspector Melvin told GRAVES that cannabis is illegal under the federal Controlled Substances Act and would not be returned, released or delivered to the church member in Ohio. GRAVES again explained the cannabis was used in CHURCH's spiritual healing practices.

35.     The cannabis sent by GRAVES was sent to a member of CHURCH for sacramental purposes and as part of the religious practices of CHURCH.

36.     The sacramental cannabis included in the package was in-part sent for healing purposes as part of CHURCH's healing sacraments for a woman suffering from esophageal cancer. Each day the sacrament is delayed, the healing process provided through the CHURCH is denied to its member suffering from esophageal cancer as well as is denied for other of CHURCH's spiritual healing practices.

37.     As of the date of the filing of this Complaint, the sacramental cannabis remains in the custody of the Defendants who continue to refuse to release it.

## FIRST CLAIM FOR RELIEF

### (*Religious Freedom Restoration Act* (RFRA),
### 42 U.S.C. §§ 2000bb, *et seq.* – Against All Defendants)

38.     Plaintiffs re-allege and incorporate the allegations included in paragraphs 1-37 of this Complaint.

39.     As part of the Federal government, RFRA applies to Defendants POSTAL SERVICE, UNITED STATES and BRENNAN. *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418 (2006) [*O'Centro*]; *Burwell v. Hobby Lobby*, 573 U.S. ___ (2014).

40.     The Defendants have seized sacramental cannabis of Plaintiff CHURCH and have refused to release, return or deliver as addressed the cannabis, which is used by church in its sacramental healing practices and religious rituals.

41.     Plaintiffs are informed and believe and based upon such information and belief allege the seizure of the sacramental cannabis of CHURCH was done based on provisions of 21 U.S.C. § 801, *et. seq*, the federal *Controlled Substances Act* ("CSA"). Inspector Melvin, as set forth above, told Plaintiff GRAVES on December 21, 2015 that cannabis was illegal under the CSA when he refused to return, release or deliver to the addressed recipient the cannabis used by CHURCH in its spiritual healing practices and religious rituals.

42.     The RFRA is applicable to the laws and rules of the Defendants, each part of the Federal government, when the rules or laws at issue – even applicable generally and not targeted at religion – substantially burden the free exercise of religion.

43. In *O'Centro, supra,* the United States Supreme Court deemed the UNITED STATES had failed to show a compelling government interest for purposes of RFRA in a case involving a CSA Schedule I controlled substance.

44. The seizure of the sacramental cannabis by the Defendants has placed a substantial burden on the spiritual healing practices of CHURCH, GRAVES, MOONEY and CHURCH's members because without it, the spiritual healing practices and rituals cannot be performed.

43. The Defendants do not have a compelling government interest justifying seizure of CHURCH's sacramental cannabis because the purpose of the CSA as announced by Congress in the 1971 *Comprehensive Drug Abuse Prevention and Control Act* was to combat the recreational abuse of drugs.

44. Cannabis used in CHURCH's spiritual healing practices, rituals, ceremonies, and as a sacrament is not the recreational abuse of drugs and the CSA's broad restriction of cannabis that substantially burdens the Plaintiffs' religious rights is not the least restrictive means of combatting recreational drug abuse.

45. The actions of the Defendants violate the RFRA and the Plaintiffs seek injunctive relief as set forth below.

## SECOND CLAIM FOR RELIEF

### (*Religious Land Use and Institutionalized Persons Act* (RLUIPA), 42 U.S.C. §§ 2000cc, *et seq.* – Against All Defendants)

46. Plaintiffs re-allege and incorporate the allegations included in paragraphs 1-37 of this Complaint.

47. BRANCH is located on land in Oregon that does not infringe on or interfere with any other property near or around it. The land used by BRANCH is located in a state that has enacted laws allowing the cultivation of cannabis and in a state listed in Section 538 where Congress has prohibited use of funds by the federal Department of Justice related to implementation of medical cannabis laws, including cultivating cannabis on the land. As part of CHURCH, BRANCH cultivates cannabis for spiritual healing practices, as a sacrament and for use in Native American rituals. BRANCH's cultivation responsibilities as part of CHURCH are

in-part based upon BRANCH's location in Oregon.

48.     By seizing sacramental cannabis cultivated by BRANCH in Oregon where state laws allow for cannabis cultivation and where Congress has prohibited use of funds for federal enforcement against medical marijuana, Defendants are discriminating against CHURCH by effectively denying it land use rights (*i.e.* cultivation of cannabis for religious purposes) based on a law of general applicability – the federal CSA – that prohibits all cannabis.

49.     Cannabis used for spiritual healing practices and in rituals of CHURCH is integral to the obligations CHURCH has with Native American Tribes and with its members.

50.     As a result of the seizure of its cannabis used for spiritual healing practices, CHRUCH has suspended BRANCH's cultivation, preparation, blessing and transportation of cannabis which has substantially burdened use of land by CHURCH, participation of members in CHURCH activities, associated transportation of members to and from CHURCH activities, compensation of members who participate in BRANCH's activities, purchase and use by BRANCH of organic components used to cultivate cannabis as well as other activities that affect interstate commerce.

51.     By discriminating against and thereby preventing CHURCH from cultivating cannabis on its land and transporting the cannabis used in its spiritual healing practices when they seized cannabis being transported to CHURCH members in another state, the Defendants have substantially burdened the Plaintiffs' free exercise and land use rights which has resulted in the affectation of commerce among the several States and with Native American tribes through a law of general applicability, the federal CSA.

52.     The actions of the Defendants described herein have divested CHURCH and BRANCH of certain land use rights related to its religious practices and substantially burdened Free Exercise rights.  Moreover, the Defendants' actions have affected commerce between the several states and Native American tribes.  Accordingly, the Defendants have violated RLUIPA and the Plaintiffs seek injunctive relief as set forth below.

## BASIS FOR INJUNCTIVE RELIEF

Fed. Rule Civ. P. 65 & 65(b)(1)(A)

53. Pursuant to Rule 65, this is a Verified Complaint. The Complaint and facts contained in it have been verified through declarations signed under penalty of perjury by James Warren Mooney, an officer of Plaintiff CHURCH and Plaintiff GRAVES.

54. The facts providing a basis for a temporary restraining order and preliminary injunction (Fed. Rule Civ. Proc. 65(b)(1)(A)) are those set forth in paragraph 1 through paragraph 50 of this complaint and are more specifically set forth as follows:

> A. The federal government has seized cannabis used in the religious ceremonies, practices and sacraments of CHURCH;
>
> B. Without the sacramental cannabis, CHURCH and its members cannot perform certain ceremonies and practice its religion;
>
> C. The U.S. Supreme Court has deemed the CSA is not the least restrictive means of furthering a compelling government interest. The CSA was enacted to combat the recreational abuse of drugs – prohibiting cannabis from CHURCH and its members who are not engaged in the recreational abuse of drug is not the least restrictive means of furthering the interest claimed by the Defendants;
>
> D. Among other members, a church member with esophageal cancer is waiting on the sacramental cannabis and each day delivery is delayed, her condition worsens;
>
> E. The seizure of CHURCH's sacramental cannabis violates both the RFRA and RLUIPA and as such constitute violations of the Free Exercise rights of the Plaintiffs protected by the Constitution.

55. "[A]n alleged constitutional infringement will often alone constitute irreparable harm." *Monterey Mech. Co. v. Wilson,* 125 F.3d 702, 715 (9th Cir. 1997). Indeed, if an individual or entity faces threat of prosecution under an invalid law, the individual or entity suffers irreparable harm. *Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 381 (1992) (a federal court may properly enjoin "state officers 'who threaten and are about to commence

proceedings, either of a civil or criminal nature, to enforce against parties affected an unconstitutional act."); *New Orleans Pub. Serv., Inc. v. Council of New Orleans,* 491 U.S. 350, 366-67 (1989) (suggesting that irreparable injury is an inherent result of the prosecution of an invalid law); *Chamber of Commerce v. Edmonson*, 594 F.3d 742, 771 (10th Cir. 2010) (concluding that plaintiff is likely to suffer irreparable injury if enforcement of an invalid state law that is not enjoined); See also *Villas at Parkside Partners v. City of Farmers Branch,* 577 F. Supp. 2d 858, 878 (N.D. Tex. 2008) (concluding that there is a likelihood of irreparable injury if enforcement of an invalid city ordinance is not enjoined).

56.     The Defendants will suffer little, if any hardship, if they are enjoined from refusing to release the cannabis seized by them. There is no evidence Plaintiffs have caused any public health, safety, or welfare issue and there is ample evidence showing the Plaintiffs are part of and engaged in bona fide religious activities.

57.     There are numerous constitutional violations set forth by Plaintiffs in this Complaint. The likelihood of Plaintiffs' success on the merits is substantial. As applied to CHURCH, the federal actions complained of herein are constitutionally infirm and violate specific federal laws that protect the Plaintiffs. Accordingly, the balance of hardships that must be weighed by the Court for purposes of injunctive relief weighs heavily in favor of Plaintiffs.

## PRAYER FOR RELIEF

Plaintiff prays for relief as follows:

A.     For a Temporary Restraining Order prohibiting the Defendants from seizing sacramental cannabis of CHURCH and requiring the cannabis seized by Defendants be immediately released and returned to Plaintiff GRAVES;

B.     For a Preliminary Injunction prohibiting the Defendants from seizing sacramental cannabis of CHURCH and requiring the cannabis, if not then already returned to GRAVES, be immediately released and returned to Plaintiff GRAVES;

C.     For a Permanent Injunction prohibiting the Defendants from seizing the sacramental cannabis of CHURCH;

D.    For costs and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 and any

other applicable provision of state or federal law; and

E.    For such other relief the Court may deem just and proper.

DATED: 1/20/16

MICHAEL ROSE   OSB #753221
Local Counsel and Attorney
for Plaintiffs

DATED:   1-15-2016

MATTHEW PAPPAS
Attorney for Plaintiffs *pro hac vice*

## VERIFICATION

I, JAMES WARREN "FLAMING EAGLE" MOONEY, am the founder and spiritual leader of the **OKLEVUEHA NATIVE AMERICAN CHURCH**, one of the Plaintiffs in the above-entitled action. I have read the foregoing **VERIFIED COMPLAINT** (including each of the Exhibits to the Complaint) and know the contents thereof for the claims and allegations made with respect to the church and to me. I certify that the same is true and correct of my own knowledge for those things that I personally know in my capacity as founder, spiritual leader and officer of the church, except as to those matters stated upon information and belief, and as to those matters I believe them to be true and correct. Also, for those things that took place on December 10, 2015, I was not present in Oregon and so make such allegations on information and belief.

EXECUTED THIS __11th__ day of January, 2016 at Salt Lake City, Utah, United States of America.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

JAMES WARREN "FLAMING
EAGLE" MOONEY

**AMENDED** COMPLAINT - 2

1

## VERIFICATION

2

3     I, JOY GRAVES, am a member of **OKLEVUEHA NATIVE AMERICAN**

4   **CHURCH**, and am also a Plaintiff in the above-entitled action.  I have read the foregoing

5   **VERIFIED COMPLAINT** (including each of the Exhibits to the Complaint) and know

6   the contents thereof, and I certify that the same is true and correct of my own knowledge

7   for those things that I personally know in my capacity as a member and branch leader of

8   the church, except as to those matters stated upon information and belief as well as

9   allegations made specifically and verified by another Plaintiff in this case and as to those

10  matters I believe them to be true and correct.

11

12  EXECUTED THIS _6_ day of _January_ 2016 at _Eugene, Oregon_          ,

13  Oregon, United States of América.

14

15     I declare under penalty of perjury under the laws of the United States of America

16  that the foregoing is true and correct.

17

18                                                    JOY GRAVES

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1



**OFFICIAL GOVERNMENT IDENTIFICATION**

COX · OSCEOLA, CHEROKEE & CREEK
INDIAN RESERVATION
P.O. BOX 521 · ORANGE SPRINGS, FL. 23070

Roll No.         Crow Clan
1320

See Back For Signature   1/3/44
James Flaming Eagle Mooney

NAME                    DATE OF BIRTH

RESERVATION CHIEF           PRINCIPAL CHIEF

**OFFICIAL GOVERNMENT IDENTIFICATION**

# EXHIBIT 2

## Oklevueha Lakota Sioux Nation Native American Church

### ARTICLES

The undersigned, Richard 'He Who Has the Foundation' Swallow, Chief of the Standing Buffalo Band and Chief of the Eagle Clan of the Oglala Sioux Tribe of the Pine Ridge, United States congressionally recognized American Native Indian Reservation, and James Warren 'Flaming Eagle' Mooney Medicine Man of the Central Seminole People, hereby certify the following:

A.  Oklevueha Lakota Sioux Nation Native American Church is an Allied and Communal Native American Church merging the Lakota Sioux Nation Native American Church and Oklevueha EarthWalks Native American Church of Utah Inc. of the United States.

B.  James Warren 'Flaming Eagle' Mooney and Richard 'He Who Has the Foundation' Swallow are the co-founders of the Oklevueha Lakota Sioux Nation Native American Church.

C.  The Great Spirit that manifests itself with each member as they walk prayerfully is what guides all activities and affairs of the Oklevueha Lakota Sioux Nation Native American Church.

D.  Symbol and/or representative logo for Oklevueha Lakota Sioux Nation Native American Church.

E.  Richard 'He Who Has the Foundation' Swallow of the Lakota Sioux Nation, is the Custodian of the Medicine (Ceremonies, Sacrament or Eucharist) of the Oklevueha Lakota Sioux Nation Native American Church for the remainder of his walk on Mother Earth.

F.  The co-founders acknowledge Oklevueha Lakota Sioux Nation Native American Church Code of Ethics is to be a guide in assisting the activities and growth of Oklevueha Nation Native American Church.

G.  Richard 'He Who Has the Foundation' Swallow, Custodian of the Medicine acknowledges by his passing (meaning to being deceased) should he not have previously appointed a Custodian of the Medicine of the Oklevueha Lakota Sioux Nation Native American Church, the following will take in effect.

H.  We advisors of Oklevueha Lakota Sioux Nation Native American Church acknowledge that Richard 'He Who Has the Foundation' Swallow' has been appointed by the Great Spirit to be the Medicine Custodian of Oklevueha Lakota Sioux Nation Native American Church, and with our signatures we accept to honor all stipulations A – I of these Articles;

I.  Principle Office Agents
    1.  Bonnie 'Winyan Waste' Swallow
    2.  Eva 'RiverOwl ' Fernandez
    3.  James Warren 'Flaming Eagle' Mooney
    4.  Linda Taylor 'BrightHawk' Mooney
    5.  Richard 'He Who Has the Foundation' Swallow

## Oklevueha Lakota Sioux Nation Native American Church

### ARTICLES – STIPULATIONS

The name of the this Native American Church is Oklevueha Lakota Sioux Nation Native American Church

A. Oklevueha Lakota Sioux Nation Native American Church is an Allied and Communal Native American Church merging the Lakota Sioux Nation Native American Church and Oklevueha EarthWalks Native American Church of Utah Inc. of the United States. This said Native American Church is also known as Oklevueha Native American Church (Native American Church and / or NAC)

B. James Warren 'Flaming Eagle' Mooney and Richard 'He Who Has the Foundation' Swallow, Chief of the Standing Buffalo Band and Chief of the Eagle Clan of the Oglala Sioux Tribe are the co-founders of Oklevueha Lakota Sioux Nation Native American Church.

James Warren 'Flaming Eagle' Mooney



Richard 'He Who Has the Foundation' Swallow

C. The Great Spirit that manifests itself with each member as they walk prayerfully is what guides all activities and affairs of the Oklevueha Lakota Sioux Nation Native American Church. The daily, weekly, quarterly and yearly affairs of Oklevueha Native American Church are managed in an allied communal manner that is exclusively led by the Great Spirit.

D. James Warren 'Flaming Eagle' Mooney and Richard 'He Who Has the Foundation' Swallow, Oklevueha Native American Church co-founders acknowledge this symbol to be the representative logo for Oklevueha Lakota Sioux Nation Native American Church



E. Richard 'He Who Has the Foundation' Swallow of the Lakota Sioux Nation, is the Custodian of the Medicine (Ceremonies, Sacrament or Eucharist) of the Oklevueha Lakota Sioux Nation Native American Church for the remainder of his walk on Mother Earth. Custodian of the Medicine primary responsibility is as followers.

    1.  Maintain the integrity of all Oklevueha Native American Church Ceremonies
        a)  Oversee all Oklevueha Native American Church ceremonies conducted in Canada, Indian Reservations, Mexico, and the United States of America
        b)  Oversee all teachings of the Oglala Lakota Sioux Spiritual Traditions
    2.  Provide all Oklevueha Native American Church Sacraments or Eucharist for all Oklevueha Native American Churches in Canada, Indian Reservations, Mexico, and the United States of America.
        a)  Cultivation
        b)  Harvesting
        c)  Distribution
    3.  Rely on the United States Government to protect Oklevueha Native American Church rights to worship as outlined in the First Amendment of the United States Constitution and more clearly outlined in the Religious Land Use and Institutionalized Persons Act of 2000.

F. The co-founders acknowledge Oklevueha Lakota Sioux Nation Native American Church Code of Ethics to be a guide to assist in the activities and growth of Oklevueha Native American Church.

### Oklevueha Native American Church Code of Ethics

Oklevueha Native American Church accepts peyote as central to its established religious belief. Peyote is the significant sacrament for this church. However, Oklevueha Native American Church honors all North and South American Native Eucharist's such as Ayahuasca, San Pedro, Tsi-Ahga, Wine and etc.

The names for the administrators of these sacraments vary. Some of the names these administrators are known by are as follows: Curandera, Elder, Ghost Dance Chief, Mara'akame, Medicine Man/Woman, Priest, Rabbi, Reverend, Sacred Pipe Carrier, Shaman, Sun Dance Chief, Water Pourer, etc. We call such people 'Spiritual Leaders': those who are experienced in some American Native Spiritual practices and who act to facilitate the spiritual practices of others. An Oklevueha Native American Church spiritual leader need not claim exclusive or definitive knowledge of his or her practice. Even though Oklevueha Native American Church's primary purpose is to administer Sacramental Ceremonies; an Oklevueha Native American Church spiritual leader is free to not administer a sacrament during a particular American Native ceremony.

All ceremonies, especially the Sun Dance, Sweat Lodge, and Vision Quest carry some emotional and physical risks, therefore, when a member and/or visiting practitioner chooses to participate in an American Native Ceremony with the assistance of an Oklevueha Native American Church spiritual leader, both takes on special responsibilities. Some of those responsibilities are as follows:

1. Oklevueha Native American Church spiritual leaders are to practice and serve in ways that cultivate awareness, empathy, and wisdom for all members and visiting participants.
2. Oklevueha Native American Church spiritual practices are inspired and conducted in ways that respect the common good, with due regard for public safety, health, and order. Often, the increased awareness gained from American Native Spiritual ceremonies will catalyze a desire for personal and social change in a member and/or visiting practitioner's life. Spiritual leaders shall use special care in assisting the direction of energies of those whom they serve, as well as their own energies, in responsible ways that reflect a loving and respectful regard for all life.
3. Oklevueha Native American Church spiritual leaders respect and seek to preserve the autonomy and dignity of each member and visiting participant. Participation in any Oklevueha Native American Church Ceremony must be voluntary and based on prior disclosure and consent given by each participant while in an ordinary state of consciousness. Disclosure shall include, at a minimum, discussion of any elements of the ceremony that could reasonably be seen as presenting physical or psychological risks. In particular, visiting practitioners must be warned that American Native Ceremonies can be difficult and dramatically transforming. Spiritual leaders shall make reasonable preparations to protect each participant's health and safety during the ceremony and the few hours of vulnerability that may follow a ceremony. Limits on the behaviors of members and visiting practitioners and spiritual leaders are to be made clear and agreed upon in advance of any American Native Ceremony. Cultural and religious customs and confidentiality are to be accepted and honored.
4. Oklevueha Native American Church spiritual leaders are aware during ceremony that members and visiting practitioners may be especially open to suggestion. Leaders pledge to protect participants and not to allow anyone to use that vulnerability in ways that harm themselves or others.
5. Oklevueha Native American Church is committed to growth through attraction of service rather than active proselytizing for membership.
6. Oklevueha Native American Church ceremonies are to be conducted in the spirit of service. Spiritual Leaders accommodate members and visiting practitioners without regard to race, religious affiliations, gender, cultural background, financial status, and/or political affiliations.
7. Oklevueha Native American Church is strictly a spiritual organization that serves individuals and the wider community, and makes absolutely no claims about being in authority or having the ability to conduct saving ordinances.

> "It is time to share the ceremonies with all people" – *Seminole Chief Little Dove*
> "Never deny anyone that asks for help" – *Lakota Sioux Roadman Leslie Fool Bull*

G. Richard 'He Who Has the Foundation' Swallow, Custodian of the Medicine acknowledges by his passing (meaning to being deceased) should he not have previously appointed a Custodian of the Medicine of the Oklevueha Lakota Sioux Nation Native American Church, the following will take in effect. The surviving Advisors will unanimously appoint a person to be bestowed of this sacred calling. This meaning he or she that is appointed will reside over all spiritual and temporal proceedings of Oklevueha Lakota Sioux Nation Native American Church according to all the stipulations outlined in A – I.

H. We advisors of Oklevueha Lakota Sioux Nation Native American Church acknowledge that Richard 'He Who Has the Foundation' Swallow' has been appointed by the Great Spirit to be the Medicine Custodian of Oklevueha Lakota Sioux Nation Native American Church, and with our signatures we accept to honor all stipulations A – I of these Articles;

1. Bonnie 'Winyan Waste' Swallow of Oglala Sioux American Native Blood linage, of the Pine Ridge Reservation _____

2. Eva 'RiverOwl' Fernández, Blackfoot Blood linage _____

3. James Warren 'Flaming Eagle' Mooney of Seminole American Native Blood linage of Central Florida _____

4. Linda Taylor 'BrightHawk' Mooney of Seminole American native Blood linage of Central Florida _____

5. Lakota Sioux Nation and Oklevueha EarthWalks Native American Church of Utah Inc
advisors

6. _[signature]_ San Bernadam Ca

7. _[signature]_ Phoenix AZ

8. _[signature]_ Dallas TX

9. _[signature]_ SALT LAKE UT

10. _[signature]_ RTS, WHE CHOON-E-KVCHA 'SOUTH DAKOTA

11. John Swallow N.E

12. Wynun White Feather South Dakota

13. Leo Swallow, JR South DakoTA

I. Principle Agents

_[signature]_ Ethel Swallow
Beanie Winyan Waste 'Bear Killer' Swallow
P.O. Box 84, Wounded Knee, South Dakota, 57794
Phone Number: 308 430-3927

_[signature]_
Eva 'RiverOwl' Fernandez
151 Lake Kentucky, El Paso, Texas 79928
Phone Number: 915 852-3971
Cell Phone: 915 526-7374

_[signature]_
James Warren 'Flaming Eagle' Mooney
1559 South 1460 East, Spanish Fork, Utah, 84660
Phone Number: 801 427-1272

_[signature]_
Linda Taylor 'BrightHawk' Mooney
1559 South 1460 East, Spanish Fork, Utah, 84660
Phone Number: 801-787-3244

_[signature]_
Richard 'He Who Has the Foundation' Swallow
P.O. Box 84, Wounded Knee, South Dakota, 57794
Phone Number: 605 867-1138

_[handwritten notation]_ E8 Uff = LM RS

We the Co-Founders of Oklevueha Lakota Sioux Nation Native American Church have personal knowledge of the facts of these Oklevueha Native American Church Articles and Article Stipulations with our signature we acknowledge these facts to be true and accurate

James Warren 'Flaming Eagle' Mooney
Co-Founder Oklevueha Native American Church

Richard 'He Who Has the Foundation' Swallow
Co-Founder and Medicine Custodian
Oklevueha Native American Church

Subscribed and sworn to, before me this  17  day of  December , 20 0 7

By  Bonnie Saxton
Notary Republic

Residing In:  Gordon  Nebraska

My Commission Expires: _____
GENERAL NOTARY - State of Nebraska
BONNIE SAXTON
My Comm. Exp. 6-8-2009

# EXHIBIT 3

## OKLEVUEHA NATIVE AMERICAN CHURCH AND THE HUICHOL NATION
### PROCLAMATION

THIS PROCLAMATION BY AND BETWEEN JAMES 'FLAMING EAGLE' MOONEY OF THE OKLEVUEHA NATIVE AMERICAN CHURCH OF THE UNITED STATES OF AMERICA AND TATA JOSE HERNANDEZ SANCHEZ OF THE HUICHOL FROM LA YESCA NAYARIT MEXICO HEREBY SERVES AS THE OFFICIAL CERTIFYING DOCUMENT FOR THE UNIFICATION OF PURPOSE TO SERVE INDIGENOUS ELDERS OF NORTH AND SOUTH AMERICA AND YOUTH TOWARD A BETTER UNDERSTANDING OF UNIVERSE, SPIRIT AND THOUGHT AND TO SHARE THESE WAYS WITH ALL PEOPLES AND COMMUNITIES REGARDLESS OF BELIEF, RACE, GENDER OR SOCIAL STANDING.

THROUGH A CEREMONY CONDUCTED BY OKLEVUEHA NATIVE AMERICAN CHURCH CUSTODIAN OF THE EUCHARIST ADAM YELLOW BIRD DEARMON AND BY FANNING WITH EAGLE FEATHERS, FOR PURPOSE OF POWER TO GO FORWARD AND WITH DIRECTION, WITH BREATH TO BREATH, HEART TO HEART, AND CLASPING ARMS, WITNESSED BY THE CREATOR FIRE, WE AND OUR ORGANIZATIONS, FROM THESE MOMENTS ON AND AS LONG AS THE RIVERS FLOW AND THE GRASS GROWS, WALK TOGETHER ON THIS EARTHLY JOURNEY AS SERVANTS, WITH THE SINGLE PURPOSE OF SERVING THE GREAT SPIRIT'S CREATION OF MOTHER EARTH, FATHER SKY AND ALL THEIR CHILDREN WITH RESPECT AND HONOR.

TATA JOSE HERNANDEZ SANCHEZ
ELDER HUICHOL MARAKAME'
LA YESCA NAYARIT MEXICO

JAMES 'FLAMING EAGLE' MOONEY
ELDER SEMINOLE MEDICINE MAN
OKLEVUEHA NATIVE AMERICAN CHURCH

DATE SIGNED: 29/12/11

DATE SIGNED: 12/8/2011

WITNESS:

ADAM YELLOWBIRD DEARMON
OKLEVUEHA NATIVE AMERICAN CHURCH
CUSTODIAN OF SACRAMENTS

DATE SIGNED: 12/12/2011

SUBSCRIBED AND SWORN TO ME

THIS DAY OF: 12/8/11

BY NOTARY REPUBLIC

RESIDING IN: _____

MY COMMISSION EXPIRES: Dec 2, 2012

WITNESS:

MEXICAN CONSULATE
COMISION NACIONAL PARA
EL DESARROLLO DE LOS
PUEBLOS INDIGENAS
DATE SIGNED: _____
D.E. "HUICHOL" TEPIC
CLAVE: 1804

# EXHIBIT 4



# USPS Tracking®


Customer Service ›
Have questions? We're here to help.


Get Easy Tracking Updates ›
Sign up for My USPS.

Tracking Number: 9505514178015344132275

Please contact the U.S. Postal Inspection Service for further information.

## Product & Tracking Information

**Postal Product:**
Priority Mail 2-Day™

**Features:**
Insured          USPS Tracking™

## Available Actions

Text Updates

| DATE & TIME | STATUS OF ITEM | LOCATION |
|---|---|---|
| | Seized by Law Enforcement | |

Email Updates

Please contact the U.S. Postal Inspection Service for further information.

| DATE & TIME | STATUS OF ITEM | LOCATION |
|---|---|---|
| December 11, 2015 , 5:40 pm | Departed Post Office | EUGENE, OR 97405 |
| December 10, 2015 , 6:09 pm | Acceptance | EUGENE, OR 97405 |

## Track Another Package

Tracking (or receipt) number

| 9505514178015344132275 | Track It |
|---|---|

## Manage Incoming Packages

Track all your packages from a dashboard.
No tracking numbers necessary.

**Sign up for My USPS ›**



**HELPFUL LINKS**
Contact Us
Site Index
FAQs

**ON ABOUT.USPS.COM**
About USPS Home
Newsroom
USPS Service Updates
Forms & Publications
Government Services
Careers

**OTHER USPS SITES**
Business Customer Gateway
Postal Inspectors
Inspector General
Postal Explorer
National Postal Museum
Resources for Developers

**LEGAL INFORMATION**
Privacy Policy
Terms of Use
FOIA
No FEAR Act EEO Data

Copyright © 2016 USPS. All Rights Reserved.